UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF OUR LADY OF PEACE,<br><br>                              Plaintiff,<br>vs.<br><br>CITY OF SAN DIEGO,<br><br>                              Defendant. | CASE NO. 09cv962-WQH-MDD<br><br>ORDER |

HAYES, Judge:

The matter before the Court is Plaintiff's Motion for Partial Summary Judgment on the Writ of Mandate Claim. (ECF No. 112).

**BACKGROUND**

On September 2, 2011, Plaintiff Academy of Our Lady of Peace ("OLP") filed a First Amended Complaint against Defendant City of San Diego ("City"). (ECF No. 109). The Complaint alleges that OLP operates an all-girls Catholic high school in the North Park neighborhood of San Diego and has been doing so for 86 years. *Id*. at 3. The Complaint alleges that OLP's "existing campus facilities are woefully outdated and inadequate to meet OLP's mission" to educate and "inspire its students to grow as committed Christians." *Id.* at 4. In 2007, OLP proposed a "Modernization Plan... that would add two new facilities to the 86-year old campus: an approximately 20,545 square foot, two-story classroom building on the west side of the campus, and a two-level, 104-space parking structure on the east side of

campus." *Id.* at 5. The Complaint alleges that the Modernization Plan would "require the demolition or removal of three single-family residences that OLP owns, in order to provide sufficient developable area for the classroom building and parking structure." *Id.*

The Complaint alleges that, on March 3, 2009, the City Council denied the development permits necessary to implement OLP's Modernization Plan. *Id.* at 9. The Complaint alleges that "[t]he City's action[s] in... rejecting the Modernization Plan have effectively precluded OLP from meeting its classroom space and program needs at its current campus." The Complaint alleges that the City's actions were "arbitrary and capricious" and without "compelling - or even rational - basis" because the City "denied the facilities needed to serve the students... and purported to preserve structures as historic that need not be preserved and are less valuable than other structures which the City has routinely allowed to be demolished." *Id.* at 10.

The Complaint alleges seven causes of action relating to the decision of the San Diego City Council to deny OLP's development permits. *Id.* The first, second, third, and sixth causes of action allege violations of OLP's right to free exercise of religion, freedom of speech and assembly, freedom of association, equal protection and due process, as secured by the First and Fourteenth Amendments to the United States Constitution and Article 1 of the California Constitution. *Id.* at 11-13, 16. The fourth and fifth causes of action allege violations of the Religious Land Use and Institutionalized Persons Act under 42 U.S.C. §2000cc. *Id.* at 14-15. The seventh cause of action petitions for a writ of mandate under California Code of Civil Procedure § 1094.5, which allows for judicial review "inquiring into the validity of any final administrative order or decision." *Id.* at 17; Cal. Code Civ. Pro. § 1094.5.

On September 27, 2011, OLP filed a motion for summary judgment on their claim for a writ of mandate. (ECF No. 112). OLP contends that the City Council "abused its discretion in three ways in denying the Academy the permits. First, the City Council did not proceed in the manner required by law.... Second, the City Council did not base its decision on specific findings. Additionally, the City Council abused its discretion by failing to provide any measureable amount of evidence to support its findings." *Id.* at 3.

On October 21, 2011, the City filed an opposition to OLP's motion for summary judgment. (ECF No. 120).[1] The City contends that "the City Council's... action was absolutely required by California law.... The City Council is the final decision-maker on all matters involving environmental impacts created by a proposed development.... [and] is held accountable and is empowered to over-rule, modify, or amend any finding made by a lesser commission or staff member within the City." *Id.* at 9.

On October 31, 2011, OLP filed a reply in support of its motion. (ECF No. 122).

On November 18, 2011, the Court heard oral arguments on the motion.

## FACTS

### I. Necessary Permits

In order to implement the Modernization Plan, OLP needs four permits from the City: a Planned Development Permit, a Site Development Permit, a Neighborhood Development Permit, and an amendment to OLP's existing Conditional Use Permit. (ECF No. 112-6). A Planned Development Permit is required for the project's proposed height, setback, and parking space deviations. (ECF No. 91-7 at 3; Administrative Record at AR-1680). A Site Development Permit is required due to the environmentally-sensitive steep slopes on the project site. (*Id.* at 4; AR-1681). A Neighborhood Development Permit is required for the provision of tandem parking on the site, and an amended Conditional Use Permit is required to increase the maximum student enrollment on the site from 640 students to 750 students. *Id.*

### II. The Environmental Impact Report

In accordance with the California Environmental Quality Act ("CEQA"), the City of San Diego Development Services Department prepared an Environmental Impact Report ("EIR") to assess significant and unmitigable impacts affiliated with the Modernization Plan. ("All local agencies shall prepare, or cause to be prepared by contract, and certify the completion of, an environmental impact report on any project that they intend to carry out or approve which may have a significant effect on the environment." Cal.Pub.Res.Code § 21151).

---

[1] In the final paragraph of their opposition brief, the City "respectfully requests that the Court enter summary judgment in their favor on Count VII...." This request is denied. The City has not filed a motion to dismiss or motion for summary judgment on this cause of action.

1  "An EIR provides the public and responsible government agencies with detailed information
2  on the potential environmental consequences of an agency's proposed decision. [citations
3  omitted]. The EIR describes ways to minimize significant environmental effects, and suggests
4  alternatives to the project, including the option of 'no project.'" *Mountain Lion Foundation v.*
5  *Fish & Game Com.*, 16 Cal.4th 105, 113 (1997), citing Cal.Pub.Res.Code § 21061.

6  The Final EIR for OLP's Modernization Project issued in September 2008. The EIR
7  lists as a "major component" of the Modernization Plan, the "[d]emolition of three single-
8  family residences (two of which are considered locally historic)." (ECF No. 112-3 at 2; AR-
9  00366). The two residences at issue are located at 2544 Collier Avenue ("Collier") and 2746
10 Copley Avenue ("Copley"). Both properties are owned by OLP. (ECF No. 120-3 at 10-12;
11 AR-07016-18).

12 The EIR distinguishes between a structure that is designated in an official report or
13 register as "historically significant," and a structure that is non-designated but still
14 "significant" for the purposes of CEQA or in the local community for historic reasons. The
15 EIR states that "[a] resource that is not listed in or determined to be ineligible for listing in the
16 California Register of Historic Resources, not included in a local register of historic resources,
17 or not deemed significant in a historical resource survey, may nonetheless be historically
18 significant for the purposes of CEQA." (ECF No. 89-19 at 8; AR-00448).

19 In describing the Collier house, the EIR states that "[t]he building is considered to be
20 significant as it possesses high artistic values and construction consistent with the
21 characteristics of the type, period, or method of the Spanish Eclectic style of architecture....
22 The historical report indicates that the building is not considered to be historically significant
23 as the building was not associated with individuals significant at the local, state, or national
24 levels." (ECF No. 89-19 at 3; AR-00443). In describing the Copley house, the EIR states:
25 "Historical research indicates that the building is not considered to be historically significant
26 as the building was not associated with individuals significant at the local, state, or national
27 levels. However, the building is considered to be architecturally significant as an example of
28 the Spanish Eclectic style of architecture...." (*Id.* at 6; AR-00446).

The EIR states that the Collier and Copley houses "are considered locally historically significant structures as they represent Spanish Eclectic architecture." (ECF No. 120-7 at 39; AR-00133). The EIR states that "[t]he loss of [Collier] is considered a significant impact under CEQA.... [and] the physical demolition or moving of [Copley], a significant historic resource, will result in a significant impact on Cultural Resources under CEQA." (ECF No. 89-19 at 10; AR-00450). "The demolition of these locally significant historic buildings is considered a significant impact." (ECF No. 120-7 at 39; AR-00133). "Relocation of either structure is not considered feasible.... cannot be assured.... [and] would not be considered as mitigating the resource loss to a level less than significant." " (*Id*. at 40; AR-00134, 450).

### III. City Staff Recommendation and Planning Commission Decision

On September 12, 2008, staff at the Development Services Department ("City Staff") recommended that the San Diego Planning Commission approve OLP's permits and certify the EIR, allowing the Modernization Plan to move forward. (AR 01678-87, 04829-31). City Staff found that:

> Although the loss of the [Collier and Copley] structures is considered significant and unmitigable as stated in the EIR, the impact is project specific. The two structures proposed for demolition are of the Spanish Eclectic style and are not considered contributing structures to a potential historic district nor would their loss adversely impact any identified historic districts within the community where architectural variety and unique historic structures are preserved.

(ECF No. 91-7 at 6; AR-01683). City Staff stated that OLP "considered adaptive reuse of these structures, but... has determined these are not viable options." City Staff concluded that "significant unmitigated impact" from the project would be inevitable. (*Id*. at 9; AR-01686).

City Staff stated that "[t]he decisionmaker will be required to make a Statement of Overriding Considerations in order to grant this request." *Id*. ("When the lead agency approves a project which will result in the occurrence of significant effects which are identified in the final EIR but are not avoided or substantially lessened, the agency shall state in writing the specific reasons to support its action based on the final EIR and/or other information in the record. The statement of overriding considerations shall be supported by substantial evidence in the record." 14 CCR § 15093(b)).

On October 9, 2008, the Planning Commission voted unanimously to approve OLP's permits, certify the EIR, and adopt OLP's draft Statement of Overriding Considerations. (ECF No. 112-9; ECF No. 120-6 at 55-56; AR-02352). As a condition to the permit approval, the Planning Commission required OLP to "cause the two non-designated historic houses located at 2544 Collier Avenue and 2746 Copley Avenue to be relocated and reused within the City of San Diego." *Id*.

**IV.    The Appeal**

On October 22, 2008, the North Park Planning Committee ("NPPC") and Between the Heights Neighborhood Group ("BeHi") appealed the Planning Commission decision to the City Council of the City of San Diego ("City Council"). (ECF No. 112-10 at 2-5; ECF No. 120-6 at 58-61; AR-05085-88). NPPC and BeHi asserted that the Modernization Plan would adversely affect the applicable land use plan (the Greater North Park Community Plan) which seeks to "preserve the architectural variety and residential character of Greater North Park" and "preserve and restore unique or historic structures within the community." *Id*. NPPC and BeHi asserted that "[t]he demolition or removal of historic homes from an older single-family neighborhood constitutes a significant and immitigable impact on the character of that community." *Id.*

**V.    City Council Findings**

On January 26, 2009, the City Council held a lengthy public hearing during which City Staff and members of the community testified regarding the Modernization Plan. (ECF No. 112-11). At this hearing, a Council member stated "that many of the residents feel strongly that some or all of the historic homes must be preserved," and that "the preservation of the historic significant homes touches a nerve for the entire community of North Park." (*Id*. at 7: AR-02494). At the conclusion of the hearing, the City Council granted a continuance to March 3, 2009, to allow OLP and members of the community an opportunity to reach mutual resolution of the matter. (ECF No. 112-14).  No resolution was reached. *Id*.

At the March 3, 2009 hearing, the City Council approved OLP's Conditional Use Permit and Neighborhood Development Permit, allowing increased student enrollment and

tandem parking in the neighborhood. The City Council denied the Planned Development Permit and Site Development Permit, prohibiting construction of the classroom and parking facilities integral to the Modernization Plan. (ECF No. 122-3 at 2-16; ECF No. 120-7 at 8-11).

In support of their denial of OLP's development permits, the City Council cited the EIR and found that the loss of the Copley and Collier houses "would result in significant and unmitigable impact." (ECF No. 122-3 at 4-5, 8-10). The City Council found that the proposed development would "adversely affect the applicable land use plan" by removing "architecturally significant structures" in conflict with the "objectives for preserving architectural variety and historic structures within the community" stated in the Greater North Park Community Plan. *Id.* Councilman Gloria stated the findings that ultimately prevailed on the matter, moving as follows:

> Although the proposed project would implement objectives in the Greater North Park Community Plan for providing high-quality educational facilities and preserving open space and hillsides, the proposed project would eliminate two historic buildings located in the immediate neighborhood, located at 2544 Collier Avenue and 2765 Copley Avenue.
> According to the project's Environmental Impact Report, the proposal to remove the two architecturally significant structures conflicts with the community plan's objective in the urban design element for preserving the architectural variety and residential character of the Greater North Park community and preserving and restoring unique or historic structures within the community. The two structures have been characterized and associated with the Spanish eclectic architectural style, and their loss, as proposed by the project, would result in significant and unmitigable impact as stated in the EIR. Therefore, the project's proposal to remove the architecturally significant structures would adversely impact the Greater North Park Community Plan's objectives for preserving architectural variety and historic structures within the community, and this finding cannot be made.
> Based upon these findings and on the findings of the information contained in the staff report, I move that the Planned Development Permit Number 450668 and Site Development Permit Number 450706 be denied, and Conditional Use Permit Number 450705 and the Neighborhood Development Permit Number 590185 be granted in the form, exhibits, terms and conditions as set forth in Permit Number 450705.
> And based upon Staff's comments today, my motion does not include adoption of the statement of overriding considerations.

(ECF No. 112-14 at 9-11).

The City Council's March 3, 2009 decision included certification of the EIR and adoption of the EIR's proposed alternative of "No Project / No Development" that would result in no significant or unmitigable impacts to the environment. (ECF No. 120-7 at 8-11). In their

1 written resolution certifying the EIR and adopting the No Project / No Development
2 alternative, the City Council found that:

> [T]he City Council has the discretion to change a proposed project to avoid substantial adverse changes to the environment under CEQA Guidelines sections 15091 and 15092 and San Diego Municipal Code section 112.0508(e); and... under Public Resources Code section 21060.5 and CEQA Guidelines section 15360, "environment" includes historic conditions within an area which will be affected by a proposed project; and... the City Council may require changes or modifications to the proposed Project to protect neighborhood character and ensure that historic homes would be preserved on-site; and... to avoid the significant environmental effects to historical resources analyzed in... the EIR, the City Council may certify the EIR with the appropriate findings and approve a No Project /No Development Alternative with a modification for parking...

*Id.*

10 On May 5, 2009, OLP responded to the City Council's decision by initiating this action.
11 In the original and amended complaint, OLP alleges various causes of action relating to the
12 City Council's decision to deny OLP's development permits. (ECF Nos. 1, 109). Both the
13 original and amended complaint include claims seeking a writ of mandate under California
14 Code of Civil Procedure § 1094.5, alleging that "[t]he City's decision rejecting the
15 Modernization Plan, and approving Use Permits prohibiting the Modernization Plan,
16 constituted an abuse of discretion, and resulted in findings not supported by the evidence...."
17 (ECF No. 1 at 13-14; ECF No. 109 at 17).

## DISCUSSION

### I. Timeliness of Plaintiff's Complaint

Defendant contends that OLP's writ of mandate claim is time barred because OLP failed to file their claim "within 30 days after the City Council's final CEQA decision modifying the [EIR]" and "failed to timely request a hearing," pursuant to California Public Resources Code §§ 22167 and 21167.4. (ECF No. 120 at 9, 19).

California Public Resources Code §§ 21167 and 21167.4 apply to "any action or proceeding alleging noncompliance with [CEQA]." Cal.Pub.Res.Code §§ 21167, 21167.4. In this case, Plaintiff's writ of mandate claim does not allege noncompliance with CEQA or question the sufficiency of the EIR, but rather challenges the City Council's decision to deny the development permits necessary for OLP's Modernization Plan under California Code of

Civil Procedure section 1094.5. The time limits of California Public Resources Code §§ 21167 and 21167.4 do not apply to Plaintiff's writ of mandate claim.

Pursuant to California Code of Civil Procedure § 1094.6, "[j]udicial review of any decision of a local agency... may be had pursuant to Section 1094.5 of this code only if the petition for writ of mandate pursuant to such section is ... filed not later than the 90th day following the date on which the decision becomes final." Cal. Code Civ. Pro. § 1094.6. The City Council's decision to deny OLP's Use Permits became final on March 6, 2009. (ECF No. 120-7 at 51; AR-00001). OLP filed the original Complaint in this case, including the petition for writ of mandate, on May 5, 2009. (ECF No. 1). The Complaint was filed within the 90 day time limit specified in California Code of Civil Procedure § 1094.6 applicable to petitions for writ of mandate under California Code of Civil Procedure § 1094.5. Accordingly, Plaintiff's petition for writ of mandate is not time-barred.

## II.     Standard of Review for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *See id.* at 248.

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quotation omitted). "Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

"However, in an action such as this in which the Plaintiff challenges the final decision of an administrative agency, the Court does not utilize the standard analysis for determining whether a genuine issue of material fact exists." *California RSA No. 4 v. Madera County*, 332 F.Supp.2d 1291, 1301 (E.D.Cal. 2003), citing *Occidental Engineering Co. v. INS,* 753 F.2d 766, 769–70 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering*, 753 F.2d at 769–70. In such cases, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.*

## III.   Writ of Mandate Claim

A writ of mandate under California Code of Civil Procedure § 1094.5 seeks judicial review of a decision by a local agency, inquiring into the validity of that final administrative order or decision. Cal. Code Civ. Pro. § 1094.5(a).

> (b) The inquiry in such a case shall extend to questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.
>
> (c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.

Cal. Code Civ. Pro. § 1094.5(b), (c).

The court only apples the independent judgment test, determining whether findings are supported by the weight of the evidence, if a fundamental vested right is involved. *Topanga Assn. for a Scenic Community v. County of Los Angeles,* 214 Cal.App.3d 1348, 1356 FN4 (1989), citing *City of Walnut Creek v. County of Contra Costa*, 101 Cal.App.3d 1012, 1016 (1980). "Cases involving abuse of discretion charges in the area of land use regulation do not involve fundamental vested rights." *Id.* In such cases, including the case before the Court, the substantial evidence test applies when evaluating the evidence underlying the findings.

After making a determination that the administrative decision was supported by the findings, the court then determines whether the findings are supported by substantial evidence in light of the whole record.

### A. Decision Supported by the Findings

OLP contends that "the City, in denying the permits OLP needed to complete its Modernization Plan, did not make sufficient findings upon which to base its eventual decision.... [and that] the City has as its sole finding the belief of some neighbors who argued that the Academy's project would not conform to the historical integrity of the surrounding area." (ECF No. 112-1 at 16-17).

The City contends that the City Council findings that: "the proposed development... will, in fact, adversely affect the applicable Land Use Plan;" "the applicant's plan... is completely inconsistent with the Greater North Park Plan;" "the applicant's Environmental Impact Report fails to present viable repurposing alternative for the historic Collier and Copley homes;" and "their loss, as proposed by the project, would result in significant and unmitigable impact[s] as stated in the EIR" supports its decision to deny OLP's development permits. (ECF No. 120 at 24-26).

"If a nonelected decisionmaking body of a local lead agency [such as a planning commission] certifies an environmental impact report... that certification... may be appealed to the agency's elected decisionmaking body." Cal.Pub.Res.Code § 21151(c). "No public agency shall approve or carry out a project for which an EIR has been certified which identifies one or more significant environmental effects of the project unless the public agency makes one or more written findings for each of those significant effects, accompanied by a brief explanation of the rationale for each finding." 14 CCR § 15091. *See also Mountain Lion Foundation*, 16 Cal.4th at 134, citing Cal.Pub.Res.Code § 21081 ("[A] decisionmaking agency is prohibited from approving a project for which significant environmental effects have been identified unless it makes specific findings about alternatives and mitigation measures.").

"Under CEQA, the public agency bears the burden of affirmatively demonstrating that, notwithstanding a project's impact on the environment, the agency's approval of the proposed

project followed meaningful consideration of alternatives and mitigation measures." *Mountain Lion Foundation*, 16 Cal.4th at 134. "The purpose of a findings requirement in review under administrative mandamus (Code Civ. Proc., § 1094.5) is 'to bridge the analytic gap between the raw evidence and ultimate decision' and to show the 'analytic route the administrative agency traveled from evidence to action.'" *Great Oaks Water Co. v. Santa Clara Valley Water Dist.*, 170 Cal.App.4th 956 (2009), citing *Topanga,* 11 Cal.3d at 515. The agency should render findings sufficient "to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the [agency's] action." *Topanga,* 11 Cal.3d. at 514. "[F]indings are to be liberally construed to support rather than defeat the decision under review." *Topanga,* 214 Cal.App.3d at 1356. "The whole purpose of the EIR 'review and consideration function' is... to expose the elected decision makers to the political heat of certifying an EIR." *Vedanta*, 84 Cal.App.4th at 527.

At the January 26, 2009 hearing which "expose[d] the elected decision makers to the political heat of certifying an EIR," the City Council noted the strong public sentiment against a plan that would demolish or move the Copley and Collier buildings. *Vedanta*, 84 Cal.App.4th at 527. At the March 3, 2009 hearing, Councilman Gloria explicitly stated "the basis for the [agency's] action" denying the permits. *Topanga,* 11 Cal.3d. at 514. Councilman Gloria stated that the significant and unmitigable impacts addressed in the EIR and conflicts with applicable land use plan prevented the City Council from approving the permits. (ECF No. 112-14 at 9-11). In the March 3, 2009 written resolution certifying the EIR and adopting the No Project / No Development alternative, the City Council set forth the CEQA guidelines and public code supporting their discretion and the findings of the EIR supporting their decision. (ECF No. 120-7 at 8-11).

The City Council repeatedly stated their findings in support of denying OLP's development permits through public hearing testimony, findings on the record, and written resolution. The City has shown that the City Council decision on March 3, 2009 to deny OLP's development permits is supported by findings. OLP is not entitled to judgment as a

matter of law on the writ of mandate claim based on the contention that the City Council decision was not supported by the findings.

### B.     Findings Supported by the Evidence

OLP contends that "[e]ven if the Court finds that the City Council's decision was supported by findings, no measurable amount of evidence supported those findings." (ECF No. 112-1 at 19). OLP contends that, "[t]he substantial evidence, as it was presented to the City Council... favored the approval of the Academy's Modernization Plan in its entirety," based upon the prior approvals of City Staff and the Planning Commission. *Id.* at 23. OLP contends that the decision by the City Council "was based primarily on public comments at two council meetings" and that otherwise the City Council "gave no explanation nor pointed to any specific contradictory findings and evidence that in any way justified or supported its position opposite of all the evidence...." *Id.* at 24.

The City contends that "the City Council followed its duty under the law to review the sufficiency of the EIR and found it inadequate to support the [development permits] requested by OLP." (ECF No. 120 at 22). The City contends that "the EIR disclosed significant impacts to City historical resources that would remain significant and unable to be mitigated if demolished or moved." The City contends that OLP failed "to propose a viable solution to the problem or demonstrate infeasibility to support the City's adoption of a Statement of Overriding Considerations." *Id*. at  24.

"When an appellant challenges an administrative decision as unsupported by substantial evidence in light of the record as a whole, it is appellant's burden to demonstrate that the administrative record does not contain sufficient evidence to support the agency's decision." *International Brotherhood of Electrical Workers v. Aubry,* 42 Cal.App.4th 861, 870 (1996). In making the substantial evidence determination, the Court "must resolve all conflicts in the evidence in favor of the judgment or decision of the tribunal below and indulge in all legitimate and reasonable inferences to support it." *Greenebaum v. City of Los Angeles,* 153 Cal.App.3d 391, 408 (1984). Substantial evidence, as used in CEQA guidelines, means "enough relevant information and reasonable inferences from this information that a fair

argument can be made to support a conclusion, even though other conclusions might also be reached." 14 CCR § 15384(a). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *California RSA No. 4*, 332 F.Supp.2d at 1302.

The EIR states that both the Copley and Collier houses are significant to their environment for representing Spanish architecture. The EIR states that Copley and Collier are not historically significant per "historical reports," but "may nonetheless be historically significant for the purposes of CEQA." The EIR describes the structures as "locally historic" resources whose loss would constitute a significant and unmitigable impact to the environment Such loss would conflict with the applicable land use law, as stated in the Greater North Park Community Plan, that endeavors to preserve and maintain historic structures within the neighborhood. The City Council heard and relied on hours of public testimony regarding OLP's Modernization Plan that reflected local opposition to the demolition of the two historic homes.

Public opposition, the applicable neighborhood land use plan, and the unmitigated significant impact that would result from implementation of OLP's Modernization Plan create "reasonable inferences to support" the City's findings and the decision to deny OLP's development permits. *Greenebaum,* 153 Cal.App.3d at 408. The administrative record in this case does "contain sufficient evidence to support the agency's decision" and the underlying findings of the City Council. *Aubry,* 42 Cal.App.4th at 870.

The Court concludes that the City has shown the findings of the City Council are "supported by the evidence." Cal. Code Civ. Pro. § 1094.5(b). OLP is not entitled to judgment as a matter of law on the writ of mandate claim based on the contention that the City Council findings were not supported by substantial evidence.

///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment on the Writ of Mandate Claim is DENIED (Doc. # 112).

DATED: December 14, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge